Let me start by saying thank you, by the way, for your service in this case. Thank you, Your Honor. And I join Judge Nguyen. I echo that. Thank you so much. Good morning, Your Honors, and may it please the Court. Lavie Ben-Dor for Petitioner Soy Monsar. I'd like to reserve three minutes for rebuttal. All right. I'll try to help you out, but keep your eye on the clock as well. Thank you. In applying the Particularly Serious Crime Bar, this Court and the BIA for decades have recognized that the essential key to determining if a crime is particularly serious is whether the nature and circumstances of the crime, as well as the sentence, justify a presumption that the person is a danger to the community. That follows naturally from the statutory text, which asks whether the person, having been convicted by a final judgment of a particularly serious crime, is a danger to the community of the United States. And so this Court has repeatedly vacated BIA decisions that fail adequately to consider whether the person is a danger. And yet here, the BIA failed to undertake that essential statutory inquiry, the sine qua non, of the Particularly Serious Crime Bar in denying Mr. Sar relief. That was legal error that requires vacating. Okay. So, counsel, you're obviously familiar with Park v. Garland. Right. So, given the statement in Loper Bright that we are not getting rid of cases, necessarily getting rid of decisions that have stood for a long time and can be backed up by stare decisis, how can we, as a three-judge panel, essentially overrule Park v. Garland? So, two points, Your Honor. I think that our front-line position is that our arguments are entirely consistent with this Court's precedents. And this Court's recognition that dangerousness is the lodestar, the sine qua non, of the Particularly Serious Crime Bar can be reconciled with cases like Miguel Miguel and Park applying the YL standard. Because all Miguel Miguel uphold in the cases since it, all they have said is that the recognition of a strong presumption is a permissible exercise of the attorney general's discretion, i.e., the attorney general is permitted to load the dice, so to speak, in favor of finding particularly serious... But General Garland talked about how it needed a minimum showing of a very small quantity of controlled substances, a very modest amount of money paid for the drugs, and merely peripheral involvement by the alien in the criminal activity. And at least as I read the facts, none of those three are satisfied here. So, we're not disputing the facts that the agency found in part because under the jurisdictional restrictions in the IOMA, we're not permitted to challenge facts. We're only permitted to raise legal challenges. But the Park and Miguel Miguel speak only to the creation of the strong presumption. They do not purport to excuse or automatically deem satisfied the requirement in the statute that the attorney general considered dangerousness. And if you look at YL, right, the decision that's being applied in Miguel Miguel in Park, the attorney general there sets out the presumption, sets out the factors he deems necessary to rebut the presumption. But then in applying that standard to the individual persons there, he considers, for example, the dangers associated with a person's role in the drug conspiracy. He considers... I guess I read at a minimum as setting a floor. Right, but our view is that the presumption has to be applied in a way that takes dangerousness into account. So, we're not disputing that the factors are what guides the presumption, but those factors have to be analyzed through the lens of dangerousness. So, it's not sufficient just to do a mechanical box-checking exercise of considering was the amount of drugs small or not, was the involvement peripheral. You have to apply those with an eye to is this a person a danger to the community. So, in YL... But it seems like you're calling for us to do the statutory interpretation in the first instance. And even if we agree with you that that's a better reading of the statutory text, we still run into our own precedent, right? So, our frontline position is that what we're asking for is consistent with this court's precedent. So, neither Miguel Miguel nor Park purport to excuse the requirement to consider dangerousness, in part because the issue, as we understand it, was not raised in those cases, the specific argument. But the First Circuit actually looked at YL. It looked at the presumption and recognized that YL on its face doesn't purport to take dangerousness into account. So, the fact that this Court's precedents have repeatedly upheld YL as an appropriate exercise of the attorney's general discretion doesn't erase the fact that there's a separate factor that has to drive the understanding of the statute that is dangerousness. And YL on its face doesn't purport to skip that statutory step. It doesn't purport to find it automatically satisfied in every case, which the attorney general recognized he couldn't do, given this Court's precedents, that the attorney general cannot create per se rules. YL and this Court's cases upholding it under Chevron do not purport to skip the key statutory inquiry of dangerousness. And so what we're asking for, at least as a front-line matter, can be squared with YL because what Miguel, Miguel, and Park had before them was YL as it was written. And the Court looked at it, and it said the statute neither permits nor precludes the creation of presumptions. And we're not disputing any of that. We accept that as the Court's holding, at least as a front-line matter. But the point is those cases do not purport to address or consider the requirement of the statute that has been a consistent through-line in the BIAs and this Court's decisions for decades, that dangerousness has to drive the inquiry. And so I think the best way to reconcile this Court's cases and read all of them in harmony is to understand YL as not skipping over the dangerousness requirement and to understand this Court's cases as not doing that either. But even if you look at it, even if you disagree with us and you think that Miguel, Miguel, and Park resolved the question of dangerousness, we think that under Loper-Bright, this Court is required under its own precedent, Miller v. Gami, to give effect to Loper-Bright, which is the most recent pronouncement on statutory interpretation. So Loper-Bright in that passage that Judge Bennett, you referenced, is talking about statutory stare decisis, which is a specific term for how the Supreme Court thinks about its own precedents. So the Supreme Court has a rule that you need a special justification to overcome a statutory precedent, and the Supreme Court in Loper-Bright says the mere overruling of Chevron is not the sort of special justification that we think is necessary to override our own precedents. But here in this Court, as in other lower courts, the relevant question isn't what does the Supreme Court do with its own precedents. The question is what does this Court do when the Supreme Court comes in and sets out a new rule that is inconsistent with this Court's precedents. But then what about Murillo-Chavez? No, no, go ahead. Sorry. What about Murillo-Chavez? So Murillo-Chavez we believe is dicta, that discussion, because if you look at Murillo-Chavez, there was an agency interpretation that had never been interpreted under Chevron. So the only question there was, under Loper-Bright, what do we think the best reading of the statute is, given this agency interpretation that we haven't evaluated before? And so the Court, we recognize, had some discussion about Loper-Bright and how the Court understood it, but that wasn't necessary to the decision because the Court there wasn't faced with a case like here where there was a previous precedent of the Court that had extended Chevron deference. And the proper framework here is not, you know, statutory stare decisis of the Supreme Court. It's this Court's own rules of decision. And this Court, you know, I think it's undisputed that this Court has the power to apply its own rules of decision. For example, this Court has a rule that even dicta in en banc decisions is given precedential effect, which not all courts apply the same. The point is each court sets its own rules of decision for how it treats its own precedents. And the binding rule here is the Miller v. Gamby test, which asks, is the reasoning or theory of a Ninth Circuit decision, the mode of logic, as I think it quoted Justice Scalia saying, is that inconsistent with the reasoning or theory of an intervening Supreme Court decision? Counsel, let me again ask a too long question. So you don't challenge the factual findings, right? No, we can't challenge the factual findings. Yes. So the BIA in what I think its final decision said, over a course of four months, the respondent took delivery, your client took delivery of meth on multiple occasions before providing it to another individual to sell. The largest shipment was over 200 grams, which was not a small amount. So we have those facts, right? Yeah. We're not I understand. So essentially what you're asking us to do here is overrule our precedent and send it back to the BIA to say, given these facts, was this person dangerous? So, yeah, we're arguing as a frontline matter. We think you can reconcile it with your precedents. If not, then we've called the entire presumption into question. But our frontline position is you send this back and you say the factors can't be mechanically checked off the way the BIA did here. They have to be applied the way the Attorney General applied them in Y.L., which is, does the amount of drugs, does the person's role support an inference that he's a danger to the community? Okay. That's sort of our frontline position. But we think even if you don't buy that what we're asking for can be reconciled with Miguel Miguel, if you look at how Miguel Miguel has operated in practice, or excuse me, the Y.L. presumptions operated in practice, what the BIA applied here wasn't what the court was looking at in Miguel Miguel and Park. In Miguel Miguel, the court expressly pointed out that what it had before it was the Attorney General's assurance this was a rebuttable presumption, that this would be something where persons would have a meaningful opportunity to contest that. But if you look at the way the Y.L. presumption is operated in practice, we have now over 20 years of precedent, and still the government can only come up with a single case where the agency determined that the presumption was rebutted. Now, the government nods in a footnote to a secret list of other decisions, but it's given this Court no indication of how big that list is or what it looks like. And so the facts that are available to the Court on the public record demonstrate that really what's before you is not Y.L. It's something different, which is this presumption that is all but entirely irrebuttable. And so this Court wouldn't even need to overrule Miguel Miguel or to depart from those cases because the Court doesn't have in front of it the same presumption that was before the Court in Miguel Miguel, which was designed and the Attorney General gave his assurances that it would be rebuttable. So even if this Court views Y.L. and Miguel Miguel as foreclosing our position, the fact that the presumption is not operating that way in practice means even without overruling precedent, the Court can conclude that the presumption, that what the government did here was not a Y.L. inquiry. And so I'd — unless the Court has further questions, I'd like to save the rest of my time for rebuttal. We ask that the Court vacate the BIA's decision in full. Thank you. Thank you, Counsel. Good morning. May it please the Court, my name is Craig Newell. I'm here on behalf of the Attorney General. The main issue in this case is the continuing viability of the Attorney General's matter of Y.L. decision that established a strong rebuttable presumption that drug trafficking, aggravated felonies like Mr. Starr's are particularly serious crimes. And the Loper-Bright decision doesn't — itself explains that Miguel Miguel remains controlling where this Court deferred to the matter of Y.L. decision. Can you address Counsel's argument that even assuming that Miguel Miguel is still good law, this case proceeded in a different fashion than how Y.L. is applied in practice? It's hard because we're not sitting hearing direct immigration matters, so we don't have a good sense of how it applies in practice. But Counsel said that if it had operated as it did in this case on a routine basis that the government would have told us so. It's this — this matter of Y.L., strong presumption, operated as it — as it — as it was set forth that this Court approved of in Miguel Miguel. There are — while it is a strong presumption, there are these mitigating factors that make the agency adjudicators look towards the particular facts of the individual's case, and that's what occurred here. The — the — what Mr. Starr seems to fabricate — But is it virtually irrebuttable? No. No. I mean, it's a — it's a strong presumption, but it is not. You — you — the matter of Y.L. presumpt — the application of it answers this dangerousness question that he is trying to add on to, that he says the Board failed to do. The substance of the matter of Y.L., the Attorney General established this strong presumption because drug trafficking is an inherently dangerous act, and so the presumption is that it's inherently dangerous. But then you look to these six mitigating factors. Every single one of them goes to the question of whether or not the crime at hand was dangerous. If you have a low amount of drugs or a low amount of money, if no violence was involved, no drug gang or criminal organization was involved. And here, you know, by applying the matter of Y.L. presumption, which the immigration judge and the Board did, they are answering that question, and they have provided the answer that, yes, this was a dangerous crime. And — and on top of this is, besides the continuing binding nature of Miguel Miguel and Park, is the Ramirez-Ramos decision, which is court-deferred to the Board's interpretation of the particular serious crime statute as not requiring this independent analysis of whether the individual himself is a danger. That is — that is what Mr. Starr is asking for, and that, again, is precluded by binding precedent. Both Murrell — if you look at Murillo-Chavez and Lopez v. Garland, both of those, using this Court's Miller-Gammey construct of when — what it — what is binding precedent said that Loper-Bright is not clearly irreconcilable with these decisions because of the Supreme Court's directive that these type of Chevron-era cases remain, given the statutory scope. The language of the statute seems to have this dichotomy. The alien having been convicted by a final judgment of a particularly serious crime is a danger to the community. It requires — it seems to the language, if we were just looking at this anew, would require two things, not one. Well, Your Honor, the way it was interpreted by the Board and upheld by Ramirez-Ramos, it goes — it's worded in that having been convicted of a particular serious crime modifies the noun alien. So once that's — once that's determined, it's basically a proxy for you are a danger of the community. But if we were just looking at that de novo, then the is a danger to the community is sort of surplusage, right? No, because the particular serious crime analysis answers that question for you. And this Court has explained that — Well, I mean, I think that the statute's language seems to focus not on the particularly serious crime, but really on dangerousness. And so, you know, what you're saying to me is that in practice, even though there's a presumption, mitigating factors and the facts of each case are still evaluated to determine whether there's dangerousness present. That is correct. The dangerousness is the underlying consideration. What Mr. Sarr wants is explicit, you know, magic words to be encanted of dangerousness. But that is what we're — we're looking at the crime itself. And when we're talking about drug trafficking, aggravated felonies, the Attorney General has established this approach that they're inherently dangerous. And so because of that, the case-by-case consideration is with these mitigating factors. And all — But when we look, for example, at Park, didn't we say there the agency may not consider the nonlisted factors that favor rebutting the presumption before it determines that the alien has satisfied the listed minimum criteria? Right. The minimum criteria come first. So if — under what our interpretation of the statute is, that if the alien doesn't satisfy the minimum criteria, there's nothing else that's done, right? There is no other — yes. Because those minimum factors, if they're not all present, what the Attorney General explained in a very well-reasoned decision is that you still have an inherently dangerous drug crime. And so that's — Isn't, though, that a separate question than whether the Attorney General determines that that alien is a danger to the community? I think we agree with you on the presumptive, you know, serious crime. But there's a clear provision in the statute, as Judge Bennett points out, that states that the Attorney General must decide. Yes. And he has — that is a express delegation of authority to him, and through a matter of why Al has decided with respect to this class of cases, drug trafficking aggravated felonies, we are going to use this strong presumption. So if we were — And this is not something — If we were to — no, I'm sorry, counsel. If we were to decide that a better reading of the statute was the one your friend argues, can we do anything with that under Miller v. Gammey, or would that be required to go to an en banc court? It would be required to go en banc. This — what this Court has already determined in Lopez v. Garland, in Murillo Chavez, when you have on-point circuit precedent about a statutory interpretation that was — you know, the Court gave deference under Chevron, that precedent remains binding. It's not clearly irreconcilable with Loper-Bright because Loper-Bright says that these Chevron-era precedents retain a statutory stare decisis value. So that is — so in that case, this Court, no, would have to go en banc to change its interpretation. And if there are no further questions — All right. Thank you, counsel. I appreciate your time. Thank you, Your Honors. Counsel, you've got about all time. Thank you, Your Honor. Just a couple points. First of all, despite you giving my friend the opportunity to discuss how Weil has been used in practice and to give the Court any indication that there's a meaningful opportunity to rebut the presumption, I don't hear anything from the government suggesting or giving anything for this Court, any real evidence for this Court to think that Weil can be meaningfully rebutted. Second, my colleague mentions — Well, if I understand his argument correctly, it's a heavy reliance on the presumption. So you look at the facts and you rely very much on the inherent dangerousness, the determination that drug trafficking offenses are inherently dangerous.  But it doesn't necessarily preclude any independent evaluation of the facts of the case. Right. But given the public evidence and the lack of anything from the government to the contrary, the way that this is operated in practice is to be that basically in almost every single case it's not actually possible for the person to rebut the presumption. And under decisions from this Court, like Blandino-Medina, like Beltran-Zavala, the government cannot create per se rules for anything that's not specifically enumerated in the statute, i.e., aggravated felonies with a prison sentence of at least five years. Second, my second point is that the government suggests that Weil answers the question of dangerousness, but there's nothing in Weil that expressly acknowledges the statutory requirement to consider danger and purports to satisfy it. And even if you could somehow divine that from Weil, there's nothing here in the BIA's decision acknowledging and purporting to apply the dangerousness requirement in the statute. And, you know, we're not asking for a magic words test. We're just asking for a minimum degree of clarity, as this Court put it in Delgado. The decision still has to be clear enough in showing the government is applying the bases in the statute. Although, I mean, what Attorney General Garland said was, I do not consider it necessary to exclude entirely the possibility of the very rare case where an alien may be able to demonstrate extraordinary and compelling circumstances that justify treating a particularly drug trafficking crime as falling short of the standard. And so he laid something out. The Court supplied that. He said more. And our precedent has upheld it.  And we recognize that. And under Miller v. Gammey, the fact that this Court's precedents have upheld Weil under Chevron, step two, merely as a permissible understanding of the statute, is clearly irreconcilable with the reasoning or theory of Loper-Bright. And that language in Loper-Bright that you mentioned earlier, that speaks only to upholding specific government actions that were before the  But what the Court had before it was the Weil presumption. That's not what is operating in practice. And so either under this Court's precedents or under a new, a fresh look, what the government did here is inconsistent with the statute. We ask that the Court vacate the BIA's decision. All right. Thank you very much to both counsel for your argument this morning. The matter is submitted. And thank you again for taking this case. We appreciate it.
judges: NGUYEN, BENNETT, Matsumoto